## CIRCUIT COURT OF HENRICO COUNTY

Bea Tiller Crute

v.

James B. Crute

April 22, 1988

Case No. 87C89

By JUDGE JAMES E. KULP

This matter is before the Court for a determination of temporary custody of the two children of the parties, and child and spousal support pursuant to the provisions of § 20-103 of the Code of Virginia. The Court has studied the memorandums of counsel, reviewed the proceedings and the matter is ripe for decision.

### I. *Custody*

Both parties agree that in custody disputes the welfare of the children is of primary and paramount importance. *Venable v. Venable*, 2 Va. App. 178 (1986). Such decisions are not easily made, and the Court must balance a number of fine distinctions in arriving at a decision on such a profound issue. The Legislature has set forth a number of considerations which must be taken into account by the Court, and the Court must consider all the evidence and facts before it. *See* § 20-107.2(1) of the Code of Virginia.

The children, Kenneth and Jamie, are thirteen and eleven years of age respectively. They enjoy good health and possess above average intelligence. They are well mannered and appear to be progressing satisfactorily in school.

Mr. Crute is forty-five years of age and obtained a bachelor's degree from the University of Richmond. He has had a number of jobs in recent years and is now self employed. Evidence was presented that although Mr. Crute has worked long hours he was a good father and provider.

Evidence was also adduced that Mr. Crute has been in psychotherapy for seven years with Dr. William Lordi for depression and Attention Deficit Disorder. Dr. Lordi attributed the depression to marital and occupational stress. At times Mr. Crute has used alcohol to medicate himself and on occasion has used it to excess.

There was also evidence that Mr. Crute may have sexually abused his children. The evidence on this issue was conflicting and has been denied by Mr. Crute. A report of one incident was made to the Henrico Child Protection Services but the county authorities were unable to locate the records. The records at the state office showed this report to be "founded," but the county officials have initiated steps to purge this record on the basis that subsequent investigation has shown this report to be erroneous.

The label of sexual abuser is a serious and damaging charge and should not be proclaimed lightly. In the absence of sufficiently clear evidence on this issue, the Court is unwilling to place such a label upon Mr. Crute.

While Mr. Crute may not be perfect, the Court finds from a review of all the evidence that he is a fit and suitable parent to have custody of his children.

Mrs. Crute is forty-three years of age and has completed one semester of college. She has worked as a secretary, bookkeeper, and an insurance underwriter. She stopped work in 1974 to devote her full time to parenting. The Court heard evidence that Mrs. Crute has been a caring and committed mother.

Evidence was presented that Mrs. Crute's early childhood experiences were unhappy, and she had been the victim of sexual abuse by a neighbor. Mrs. Crute has also been in counseling for depression with low self-esteem. Conflicting evidence was presented as to whether Mrs. Crute should be diagnosed as a border-line personality.

Upon a review of all the evidence, the Court is unable to find any sufficient reason why Mrs. Crute is

not a fit and suitable parent to have custody of her children.

The Court is required to consider the relationship between each parent and the children as well as the role each parent has played and will play in the future in the upbringing and care of the children. *See* Section 20-107.2(1)(c) and (e). In this regard Mrs. Crute urges the Court to give paramount importance to which parent has been the primary caretaker of the children. The Court believes such a focus is not the appropriate approach in determining custody. The Court's reasoning is that in nuclear families one parent generally assumes the role of primary provider for the family, and the other parent fulfills the role of primary caretaker of the children. In such circumstances, the non-providing parent would always be favored in custody disputes. As this case amply illustrates, Mrs. Crute ceased work in order to devote full time to parenting while Mr. Crute undertook to earn the money needed to sustain the family.

Such a rule as espoused by Mrs. Crute would not only be unfair to one of the parents but would also place a premium on the quantity of time a parent spends with the children rather than on the quality of such time. What is important in determining custody is not how long a parent spends with the children but what is accomplished during that time. Further such a rule would appear to conflict with the legislative mandate in § 20-107.2 that "as between the parents, there shall be no presumption or inference of law in favor of either."

When examining the quality of the relationship of each parent with the children, the evidence establishes that Mrs. Crute has a close and affectionate relationship with both children. She has provided for both the emotional and physical needs of the children. The testimony showed that generally the children would take their needs and concerns to Mrs. Crute in situations when both parents were present. Mrs. Crute has been the parent who has been involved in the children's activities, and the primary parent concerned with their education. Several witnesses testified to the total commitment of Mrs. Crute to the children.

Taken as a whole the evidence demonstrates that Mrs. Crute has had a significant role in nurturing and

shaping the character of the children. She has been involved in the children's day-to-day activities and has supplied them with an environment in which they can grow to their full potential.

When reviewed from the perspective of the relationship of Mr. Crute with the children, the evidence shows a different picture. Mr. Crute has been relatively uninvolved with the children and their activities. Some of this can be explained of course due to the need of Mr. Crute to be employed. The evidence establishes, however, that even during those occasions when he was not working he did not take as active a role as did Mrs. Crute. Testimony was adduced that Mrs. Crute was more active in family get-togethers with the parental grandparents than was Mr. Crute. Mr. Crute had very little contact with the children's schools and would rarely participate in family outings.

The evidence is clear that Mr. Crute does not enjoy the bonding relationship with the children as does Mrs. Crute. There is no question but that Mr. Crute has provided the children the necessities of life, *i.e.*, food, clothing, and shelter. As important as these are, they do not serve as a substitute for the emotional needs of the children. Children need to be loved and nurtured, particularly during their formative years. It is in these areas that Mr. Crute's investment has been lacking.

A large portion of the hearings was related to the fact that Mrs. Crute is affiliated with Jehovah's Witnesses, and the impact this has had and will continue to have upon the children. Whatever else may be said on this issue, Mr. Crute cannot claim surprise since Mrs. Crute was a Jehovah's Witness when they were married.

One of the overarching freedoms in this country is that of religious freedom. The founders of this country fought a war with England in order to establish this principle. Religious freedom occupies a prominent position in the Bill of Rights, and the Courts must move with great circumspection in so sensitive an area. In *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1971), the Supreme Court observed that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion."

It is not for the Courts to pass upon the comparative merits of various religions. No evidence was presented which in any way indicates that the teachings or practices of Jehovah's Witnesses are subversive of morality and decency, and the Court is unwilling to find that Mrs. Crute is disqualified from being a custodial parent on this ground alone.

The Supreme Court recognized in *Yoder, supra*, that the power of parents, even when linked to a free exercise of religion claim, may be subject to limitations where it appears that parental decisions will jeopardize the health or safety of the children. It was for this reason that the Court admitted evidence of the religious beliefs and practices of the Jehovah's Witnesses as they reasonably related to potential mental or physical harm to the welfare of the children.

The evidence fails to substantiate that Mrs. Crute's religious beliefs were such that she engaged in a course of action which showed an utter disregard and indifference to the children. To the contrary, the evidence established that Mrs. Crute was highly involved with the children and always gave priority to their needs. It is true that Mrs. Crute devotes substantial time to her religion, but the majority of this time is spent while the children are engaged in school. The children spend about five hours per week at church, but are allowed the freedom to choose or not to choose this activity.

Further, the evidence clearly establishes that the children are allowed to choose whether to participate in religious holidays, such as Christmas, and school activities. The children engage in Christmas and Thanksgiving with Mr. Crute and his parents. While not formally participating in these events, Mrs. Crute assists in preparing celebration meals. The children's teacher testified that they have not suffered any social repercussions as a result of any non-participation in school activities.

The evidence was conflicting on whether certain writings of the children contained "apocalyptic themes." Dr. Lordi was of the opinion that they did, while Dr. Carol Mullen came to the opposite conclusion. The fact that family friends, neighbors, counselors, and teachers all testified that the children are normal healthy children support Dr. Mullen's conclusion.

Mr. Crute testified that Mrs. Crute encourages the children to "shun" him as a consequence of her religious beliefs. Not only was this denied by Mrs. Crute, but the evidence is to the contrary. Mr. Crute's brother and sister-in-law testified that Mrs. Crute fostered a relationship between the children and Mr. Crute's family, despite their lack of affiliation with the Jehovah's Witnesses.

In short, the Court finds no evidence to support a conclusion that Mrs. Crute's religious beliefs are in any way inimical to the health and well being of the children. The children are not being isolated or ostracized by society because of this religious affiliation.

After a careful consideration of all the evidence and the criteria set forth in § 20-107.2(1), the Court is of the opinion that custody of Kenneth and Jamie should be awarded to Mrs. Crute. Such a decision has not been arrived at lightly, but the Court is convinced that it is in the best interests of the children. Further, having found Mr. Crute to be a suitable parent, the Court reserves to him reasonable rights of visitation.

## II. *Support*

Section 20-103 provides that the Court may make any order deemed proper to provide for maintenance and support of the spouse and children. In this case Mr. Crute has undertaken new employment, and Mrs. Crute is in the process of re-entering the job market. At the time of the hearings Mr. Crute estimated his monthly income at $2,000.00, and Mrs. Crute estimated her income at $300.00 per month.

In view of the fact that both parties are in transition, the Court will enter a temporary award until more accurate information from both parties is available.

The Court will order Mr. Crute to pay child support of $200.00 per child per month and $100.00 per month spousal support. One half of each payment is to be made on the first and fifteenth of each month commencing on May 1, 1988.

In addition to these payments Mr. Crute is ordered to continue to make the mortgage payments on the family residence as well as to continue health care coverage for both children and for Mrs. Crute.

The evidence has shown that a high degree of tension exists in the family residence between the parties, and the Court finds this to create a detrimental environment for the children. The Court will further order that Mrs. Crute and the children have exclusive use and possession of the family residence during the pendency of the suit.